```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
BYRON LAWSON,

                         Plaintiff,
                                                              07-cv-6544
                v.
                                                              **DECISION**
ROCHESTER CITY SCHOOL DISTRICT,                               **and ORDER**
INTERIM SUPERINTENDENT OF SCHOOLS
WILLIAM C. CALA, AND JOANNE GIUFFRIDA,
INDIVIDUALLY

                         Defendants.
_____
```

## **INTRODUCTION**

Plaintiff, Byron Lawson ("Plaintiff"), brings this action pursuant to 42 U.S.C. §1981 and 42 U.S.C. §1983, alleging that Defendants, the Rochester City School District ("District"), and Joanne Giuffrida ("Giuffrida")[1] and William C. Cala ("Cala") individually, discriminated against him on the basis of race and made stigmatizing statements about Plaintiff that deprived him of a liberty interest.[2] Defendants have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure

---

[1] Joanne Giuffrida served as the District's Human Resources Director from June 16, 2003 until September 27, 2008. The Plaintiff has conceded that his claim against Giuffrida should be dismissed, as she did not serve in this position during the relevant time period and she played no role in his suspension or termination. Therefore, Plaintiff's claims against Giuffrida are dismissed with prejudice.

[2] Plaintiff's four count complaint originally alleged a "Class of One" violation of the Equal Protection Clause, based on racial discrimination, however Plaintiff voluntarily withdrew this claim in accordance with the Supreme Court's decision that such a claim was improper in the context of public employment. See Engquist v. Oregon Dep't of Agriculture, 553 U.S. 591 (2008).

1

("Rule 56(c)"), arguing that there is no evidence of racial discrimination or that the alleged stigmatizing statements violated Plaintiff's constitutional rights. Additionally, Defendants argue that Plaintiff's claims for racial discrimination are barred by the applicable statutes of limitations. For the reasons set forth below, this Court finds that Plaintiff's claims for racial discrimination are untimely and grants Defendant's motion for summary judgement with respect to the Plaintiff's remaining claims.

## BACKGROUND

Plaintiff was employed by the Rochester City School District as a paraprofessional at the John Williams School #5 ("School #5) until he was suspended on January 5, 2001 and subsequently terminated on February 13, 2003. Plaintiff was suspended following a report on December 22, 2000, from Patricia Geer, a speech therapist at School #5, that Plaintiff was found with a male student in a bathroom in the basement of School #5. Geer reported that the student had his back up against a wall and Plaintiff was standing in front of him. The District investigated the report and School Psychologist, Dr. Edward Yansen, interviewed the student and his mother. Dr. Yansen concluded that the student had been sexually abused by Plaintiff. Plaintiff was arrested by the Rochester Police Department on charges of sexual abuse and endangering the welfare of a child, but a Monroe County Grand Jury declined to issue an indictment. The District's Human Resources

2

Director, Rebecca Torres-Lynch also investigated the incident, interviewing ten witnesses and reviewing twenty two documents. In her January 13, 2003 report, Torres-Lynch concluded that the Plaintiff's employment should be terminated, and Plaintiff was terminated on February 13, 2003.

Plaintiff's union, the Rochester Association of Paraprofessionals ("RAP"), brought a grievance against the District for wrongful termination and instituted arbitration on his behalf. Arbitration concluded in 2003 and the Arbitrator issued an opinion on April 27, 2005 directing the District to reinstate Plaintiff because they did not have sufficient cause to terminate his employment. The District then initiated a CPLR Article 75 proceeding in New York State Supreme Court to overturn the Arbitrator's decision, but the District's petition was denied. The District appealed this decision to the Appellate Division, Fourth Department. The Fourth Department denied the District's appeal and the litigation concluded when the New York State Court of Appeals denied the District's motion for leave to appeal the Fourth Department's decision on March 22, 2007.

Prior to the conclusion of the litigation, in October 2006, the Principal at School #5, Joanne Wideman ("Wideman"), learned, after questioning a television station cameraman filming in front of the school, that a local television station would be airing a news program on the sexual abuse of children and sexual abuse in

3

schools. The cameraman did not describe the content of the program in more detail. Wideman subsequently placed an item on the weekly bulletin to inform the staff of the upcoming newscast. The bulletin was distributed to the staff during the first week of October in 2006. The bulletin item read as follows:

> **Program to Air this Sunday**
> There will be a segment on the news regarding the struggles that school districts such as Rochester have in trying to prevent rapists from working with our children. School 5 may be a part of the segment due to an alleged situation several years ago. Be prepared to assure our students that they are safe at School No. 5 if the topic arises.

When the newscast aired the program referred to the incident between Plaintiff and the male student in 2000. Wideman stated that she did not know that the newscast would refer to this incident or that it would mention the Plaintiff by name.

Later in October 2007, the District issued back pay to Plaintiff and offered him a position as a paraprofessional at Charlotte High School. Plaintiff declined this offer because he wanted to return to work at School #5, but the District declined to place him in School #5. Plaintiff then filed this lawsuit on November 7, 2007 alleging several theories of racial discrimination under 42 U.S.C. §1983 and 42 U.S.C §1981 and a "Stigma-Plus" claim under 42 U.S.C §1983 related to the distribution of the October 2006 bulletin.

4

**DISCUSSION**

A party is entitled to summary judgment if it can demonstrate "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Once the movant has " 'show[n]' " or "point[ed] out ... that there is an absence of evidence to support the nonmovant['s] case," the burden shifts to the nonmovant. See Celotex Corp. v. Catrett, 477 U.S. 317, 325-27 (1986). To discharge this burden, "a plaintiff must come forward with evidence to allow a reasonable jury to find in his favor" on each of the elements of his prima facie case. See Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir.2001).

The court must draw all factual inferences in favor of the party against whom summary judgment is sought and view the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the non-moving party. See Anderson, 477 U.S. at 255; Celotex Corp., 477 U.S. at 322. However, the non-moving party benefits from such factual inferences "only if there is a 'genuine' dispute as to those facts." See Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1776 (2007). The law is

5

well established that "conclusory statements, conjecture, or speculation" are insufficient to defeat a motion for summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir.1996). The non-moving party cannot survive summary judgment simply by proffering "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), or presenting evidence that "is merely colorable, or is not significantly probative." See Savino v. City of New York, 331 F.3d 63, 71 (2d Cir.2003) (quoting Anderson, 477 U.S. at 249-50, (citation omitted)). Rather, he must "set out specific facts showing a genuine issue for trial." See Fed.R.Civ.P. 56(e)(2); see also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.1998) ("non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of...events is not wholly fanciful.").

### A. 42 U.S.C. §§1981, 1983 Statutes of Limitations

The Statutes of Limitations for a claim under 42 U.S.C §1983 and 42 U.S.C §1981 are three years and four years, respectively, from the dates the actions accrued. See Owens v. Okure 488 U.S. 235 (1989); See also Jones v. R.R. Donnelley Sons Co., 541 U.S. 369 (2004). Defendant argues that Plaintiff's claims for racial discrimination are time barred because they are based on his January 5, 2001 suspension and February 13, 2003 termination by the District. Plaintiff contends that his claims are based on the

allegedly stigmatizing comments in the October 2006 bulletin, his "constructive discharge" after the District failed to reinstate him to School #5 in 2007, and the fact that the District treated a Caucasian employee, David Heil ("Heil"), who was accused of sexual abuse in April 2000, differently than Plaintiff[3]. This Court finds that Plaintiff's claims for racial discrimination pursuant to §1983 and §1981 are time-barred by the applicable statutes of limitations.

All of Plaintiff's claims for racial discrimination center around his disparate treatment claim. Specifically, Plaintiff argues that because Heil was not terminated from his position when he was accused of sexually abusing a student, but merely transferred to another school, and because Plaintiff was fired from his position in February 2003, the District has treated him differently because of his race. Plaintiff also cites the fact that Heil was subsequently found guilty of sexual abuse by a jury to support his claim for disparate treatment. The allegations of

---

[3] Heil was a Caucasian tenured teacher in the Rochester City School District. Heil allegedly sexually abused a third-grade student in April 2000. After the allegations arose, Heil was suspended and ultimately transferred to another school as it appeared, after an investigation, that there was not enough evidence to meet the District's burden for removing a tenured teacher pursuant to New York State Education Law §3020-a. Therefore, in 2000, the District negotiated a settlement with the Rochester Teacher's Association, Heil's teacher's union, whereby Heil would be moved to another location, but his employment would not be terminated. The mother of the student who alleged that Heil had abused him later filed a criminal complaint with the Rochester Police Department in 2006, and Heil was convicted by a jury in 2007. Heil's conviction was subsequently overturned by the Appellate Division, Fourth Department because the trial court erred in introducing hearsay evidence that was highly prejudicial. Heil was granted a new trial. See People v. Heil, 70 A.D.3d 1490 (4th Dept. 2010).

disparate treatment arose in February 2003, at the latest, as that was the last action the District took with respect Plaintiff's employment that can be reasonably used as factual support for his claim of disparate treatment, and all of the District's actions with respect to David Heil took place in 2000. Therefore, Plaintiff's claims arising under either 42 U.S.C §1981 or 42 U.S.C §1983 are barred by the applicable statutes of limitations, as he filed suit on November 7, 2007, more than four years after the causes of action accrued.

The District's actions in 2006 and 2007 are not reasonably related to Plaintiff's claims for racial discrimination and therefore, they cannot serve as the basis for determining whether Plaintiff's claim is timely. Plaintiff argues that the October 2006 bulletin can be used to support his claim for racial discrimination based on disparate treatment because the District did not place a similar item in a school bulletin about Heil. However, Plaintiff has offered no evidence, other than his own conclusory statements, that similar statements were not made about Heil because he was Caucasian. Moreover, it is clear from the evidence that the only reason such statements were made was because a local news station was preparing to air a news program about sexual abuse in schools, and that School #5 may be mentioned. The fact that neither the bulletin nor the news broadcast referred to Heil does not support Plaintiff's claim that the District's actions

8

were racially discriminatory.[4]  Therefore, this Court declines to use October 2006 as a basis for determining whether his claims for racial discrimination are timely.

Additionally, Plaintiff's claims for racial discrimination based on his "constructive discharge" in 2007 are without merit as an offer to reinstate Plaintiff in a different school and Plaintiff's refusal of such offer do not amount to a "constructive discharge." See Mack v. Otis Elevator Co., 326 F.3d 116, 128 (2d Cir. 2003) (agreeing with the district court's determination that no reasonable trier of fact would consider a transfer to another location to be a constructive discharge).[5]  Likewise, Plaintiff

---

[4] This Court notes that the school bulletin also did not mention the Plaintiff by name, the bulletin item was written before the news program aired and the school did not know that the program would refer to the Plaintiff.

[5] Plaintiff, in his Deposition, stated that he did not want to go to another school because he wanted to "go back to No. 5 School where you took me from." He also stated that he felt uncomfortable working at another school because of the television broadcast. Later, in his Declaration in support of the instant motion, Plaintiff stated that he felt stigmatized and uncomfortable by October 2006 bulletin and could not return to another school to work. Defendants correctly point out that the Plaintiff cannot create a material issue of fact by disputing his own prior testimony, in order to survive a motion for summary judgement. See Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F. 2d 566, 572-3 (2d Cir. 1991). It would have been reasonable for Plaintiff to refuse to return to School #5, where the allegations of sexual abuse arose and where the staff may be aware of his case. However, his refusal to return to another school because he wanted to remain at School #5 is inconsistent with his argument that actions by the Principal at School #5 sending out the bulletin caused him to feel stigmatized and uncomfortable. Plaintiff also cannot impute the television station's actions to the Defendants. Therefore, this Court concludes that there is no issue of material fact with respect to Plaintiff's claim for "constructive discharge," as Plaintiff cannot support such a claim simply because he did not wish to work at another location. This Court also notes that the Plaintiff was employed by the District, and not by a particular school. The District's decision to reinstate him to any school in the district should be sufficient to satisfy their obligation pursuant to the State Court's decision.

9

cannot claim that this is evidence of disparate treatment, as the District's final action with respect to Heil's employment was to transfer him to another location. Therefore, this court declines to consider October 2007 as a basis for calculating whether Plaintiff's claims for racial discrimination are timely.

Plaintiff, citing Jute v. Hamilton Sundstrand Co., 420 F.3d 166 (2d Cir. 2005), also argues that this court should consider the District's earlier actions as "background evidence" for Plaintiff's claim of racial discrimination and that the later events should serve as the accrual dates for the purpose of determining whether the claim is timely. However, in Jute, the time-barred claims used as "background evidence" were reasonably related to the plaintiff's claims for retaliation. Here, the factual allegations underlying Plaintiff's claim for racial discrimination, as discussed above, are not reasonably related to the 2006 bulletin or his 2007 reinstatement in a different school. Rather, the later dates are relevant to Plaintiff's Stigma-Plus claim, discussed below, and his claim for constructive discharge, which this Court has found to be without merit. Therefore, this Court dismisses Plaintiff's claims for racial discrimination under 42 U.S.C §1983 and 42 U.S.C §1981 because they were not brought within the time period of the applicable statutes of limitations.

B. Stigma-Plus Claim

Plaintiff's remaining claim under 42 U.S.C §1983 is a "Stigma-

Plus" claim relating to the October 2006 bulletin. A Stigma-Plus claim requires that a plaintiff prove "(1) the utterance of a statement ... that is injurious to ... reputation, that is capable of being proved false, and that [they] claim[ ] is false, and (2) some tangible and material state-imposed burden in addition to the stigmatizing statement [the plus]." See Monserrate v. New York State Senate, 599 F.3d 148 (2d Cir. 2010). Defamation and a prior or subsequent dismissal from public employment can qualify for a Stigma-Plus claim, but the defamation and dismissal must be temporally related. See Donato v. Plainview-Old Bethpage Cent. School Dist., 96 F. 3d 623, 630 (2d Cir. 1996). Plaintiff argues that the October 2006 bulletin created the "stigma" and is temporally connected to his February 2003 dismissal or, alternatively, his October 2007 reinstatement. However, Plaintiff's arguments are not factually supported. First, it is unclear from the face of the bulletin that Plaintiff is the subject. Taken together with the television program, it appears that Principal Wideman was referring to the incident involving the Plaintiff, however, the facts presented show that Principal Wideman was not aware that the television program would discuss Plaintiff. Plaintiff has offered no evidence to show that Principal Wideman knew that the program would mention his name or discuss the incident involving Plaintiff. Therefore, it cannot be shown, as Plaintiff contends, that Wideman was referring to Plaintiff as a

11

"rapist." The bulletin reads like a general description of the upcoming news program, not, as Plaintiff contends, like a description of the Plaintiff. This Court also notes that the bulletin refers to an "alleged incident" at the school, which, even if it refers to the incident involving Plaintiff, cannot be the basis for a Stigma-Plus claim, because it is true that there was an "alleged incident" relating to sexual abuse at the School.

Additionally, Plaintiff's dismissal in 2003 is not related temporally (or factually) to the alleged stigmatizing statements. Plaintiff has not introduced any evidence that the two incidents were in any way connected. The October 2006 bulletin was engendered by Principal Wideman's discovery that a news program would soon air that may mention School #5. It was not related to her knowledge of the Plaintiff's case or the fact that he was dismissed in 2003 or would be reinstated in 2007, a fact which she could not have anticipated. Further, Plaintiff's reinstatement in 2007 cannot be considered the "plus" as the Plaintiff was not being deprived of a liberty interest, but rather his liberty interest was restored in 2007. Therefore, this Court finds that Plaintiff has not presented a material issue of fact with respect to his "Stigma-Plus" claim, and thus his claim is dismissed.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is granted and Plaintiff's claims are dismissed

with prejudice.

        ALL OF THE ABOVE IS SO ORDERED.

                        S/ Michael A. Telesca

                        _____
                           MICHAEL A. TELESCA
                        United States District Judge

Dated:    Rochester, New York
           October 22, 2010